El Pueblo de Puerto Rico, demandante y apelado, *v.* Salvador Rodríguez Prieto, acusado y apelante.

Núm. 10198.—*Sometido:* Diciembre 8, 1943. *Resuelto:* Enero 13, 1944.

*Samuel R. Quiñones,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE INTERINO SEÑOR TRAVIESO emitió la opinión del tribunal.

El apelante fué acusado de un delito de asesinato, convicto de homicidio voluntario y sentenciado a la pena de tres años de presidio. En el mismo acto fué convicto y sentenciado a tres meses de cárcel por la portación ilegal de un revólver. El presente recurso ha sido interpuesto contra ambas sentencias. Discutiremos los señalamientos de error en el mismo orden en que aparecen formulados en el alegato del apelante.

 1º Que la corte sentenciadora nunca adquirió jurisdicción sobre la persona del acusado ni la tuvo para conocer de los delitos que se le imputaron.

Se basa la alegada falta de jurisdicción: (*a*) en que los testigos en cuyas declaraciones se fundó la acusación fueron examinados por el Fiscal del Distrito y la acusación no fué formulada por éste y sí por el fiscal auxiliar; (*b*) en que el juramento del fiscal auxiliar sobre su creencia de que existía justa causa es nulo, pues no expresaba que la creencia era la de dicho fiscal auxiliar; y (*c*) que de la prueba resulta que los hechos ocurrieron en jurisdicción del pueblo de Gurabo, que forma parte del distrito judicial de Humacao

y no en jurisdicción de Trujillo, según se alegó en la acusación.

Los alegados fundamentos (*a*) y (*b*) carecen de méritos. En el caso de *Pueblo* v. *Pagán,* 49 D.P.R. 436,. 442 la acusación fué formulada por el Fiscal del Distrito de Ponce, basándola en el testimonio de testigos examinados bajo juramento ante el fiscal de Guayama. Se resolvió que la acusación estaba bien presentada y que la corte adquirió jurisdicción para conocer del caso.

El artículo 3 del Código de Enjuiciamiento Criminal dispone que la acusación presentada por el fiscal debe ser confirmada con su declaración jurada, y que ésta "será suficiente si en ella se expresa que la acusación se funda en las declaraciones de testigos juramentados por él o las declaraciones de testigos examinados ante un juez instructor, y que él cree solemnemente que existe justa causa para formular la acusación." Las dos acusaciones en el presente caso se ajustan a las disposiciones del citado artículo. El fiscal auxiliar de San Juan declara bajo juramento que la acusación está basada en el testimonio de testigos "examinados bajo juramento ante el Fiscal del Distrito." La frase "creyendo solemnemente que existe justa causa para presentarla al Tribunal", no puede referirse a otra persona sino a la del fiscal auxiliar, que es quien está declarando. El fiscal que tomó las declaraciones de los testigos actuó como juez instructor, de acuerdo con las facultades que la ley les concede a los fiscales; y al fiscal auxiliar, quien está facultado para formular acusaciones, la formuló basándola en el testimonio tomado por el fiscal, actuando como juez instructor.

■ Hemos examinado la transcripción de evidencia. Ella establece fuera de toda duda que el hecho imputado al acusado fué realizado dentro de la jurisdicción del pueblo de Trujillo Alto, que forma parte del distrito judicial de San Juan.

■■ 2º Que la corte inferior erró al permitir que el Dr. J. E. Martínez declarase sobre la autopsia que practicó a un cadáver que dicho testigo dijo ser el de Julio Betancourt.

No encontramos en este señalamiento razón alguna para que le demos seria consideración. No es necesario que el médico que practica una autopsia haya conocido en vida a la persona cuyo cadáver va a examinar. Ese conocimiento tiene que adquirirlo necesariamente por los informes de las personas que conocieron en vida al interfecto. Tanto los testigos de la acusación como los de la defensa declararon sobre el encuentro entre el acusado y Julio Betancourt, en el cual éste resultó muerto de un tiro de revólver. El acusado al interponer como su única defensa la de que había dado muerte a Betancourt en defensa de su propia vida, admitió el hecho de que Betancourt había muerto, haciendo inmaterial la descripción pericial de la herida y la trayectoria que había seguido la bala en el cuerpo del occiso.

■ 3º Que la corte inferior erró al no permitir al testigo Marcelo Román declarar sobre el hecho de que había sido procesado treinta y cinco veces por agresiones y delitos de sangre.

El alegado error no fué cometido. El artículo 158 de la Ley de Evidencia (art. 520 Código de Enj. Civil) especifica cuándo y cómo puede ser tachado un testigo por la parte contra la cual se presenta. El testigo puede ser tachado (*a*) mediante evidencia contradictoria; (*b*) con prueba de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; y (*c*) con evidencia de que fué convicto de delito grave (*felony*). Del interrogatorio que consta en la transcripción de la evidencia, aparece que los hechos específicos que la defensa trató de imputar al testigo, con el propósito de impugnar su veracidad, de ser ciertos, no eran calificables como delitos graves y sí como *misdemeanors*. Y esa prueba era claramente inadmisible.

La regla establecida por el caso de *El Pueblo* v. *Pérez,* 36 D.P.R. 713, no es aplicable a la situación de hechos que motiva este señalamiento.

■ 4° Que las sentencias recurridas son erróneas por estar basadas en un veredicto rendido por errónea apreciación de la prueba.

La prueba de cargo, que fué creída por el jurado, es más que suficiente para justificar el veredicto de homicidio voluntario. El conflicto entre esa prueba de cargo y la aducida por el acusado para establecer la defensa propia fué dirimido por el jurado en contra del acusado. No habiéndose imputado pasión, prejuicio o parcialidad, ni tampoco la comisión de un error manifiesto en la apreciación de la prueba, es nuestro deber respetar el veredicto.

*Las dos sentencias recurridas serán confirmadas.*

El Juez Asociado Sr. Snyder no intervino.